IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Keisha Singletary, *on behalf of*, MDS ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> Michael J. Astrue, ) <br> Commissioner of Social Security, ) <br> ) <br> Defendant. ) <br> ) | Civil Action No. 6:10-3264-RMG-KFM <br><br> **REPORT OF MAGISTRATE JUDGE** |

This case is before the court for a report and recommendation pursuant to Local Civil Rule 73.02(B)(2)(a) DSC, concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff, who is proceeding *pro se*, brought this action on behalf of M.D.S., her minor son, pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended (42 U.S.C. 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for supplemental security income benefits under Title XVI of the Social Security Act.

## ADMINISTRATIVE PROCEEDINGS

The plaintiff filed an application for supplemental security income ("SSI") benefits on January 10, 2008, on behalf of M.D.S., alleging disability beginning on March 26, 2004 (Tr. 66-67, 106-12). The application was denied initially and on reconsideration by the Social Security Administration. On December 18, 2008, the plaintiff requested a hearing. The administrative law judge ("ALJ"), before whom the plaintiff appeared on November 19, 2009, considered the case *de novo*, and on April 21, 2010, denied the

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

application. The ALJ's finding became the final decision of the Commissioner of Social Security when it was approved by the Appeals Council on November 3, 2010. The plaintiff then filed this action for judicial review.

In making his determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

> 1. The claimant was born on March 2, 2000. Therefore, he was a preschooler[2] on February 5, 2008, the date the application was filed, and is currently a school-age child (20 C.F.R. § 416.926a(g)(2)).
>
> 2. The claimant has not engaged in substantial gainful activity since February 5, 2008, the application date (20 C.F.R. §§ 416.924(b) and 416.971 *et seq.*)
>
> 3. The claimant has the following severe impairments: attention deficit hyperactivity disorder, behavior problems, and impulse control disorder (20 C.F.R. §§ 416.924(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.924, 416.925, and 416.926a).
>
> 5. The claimant does not have an impairment or combination of impairments that functionally equals the listings (20 C.F.R. § 416.924(d) and 416.926a).
>
> 6. The claimant has not been disabled, as defined in the Social Security Act, from February 5, 2008, the date the application was filed (20 C.F.R. § 416.924(a)).

---

[2]The ALJ's statement that M.D.S. was a pre-schooler when he was nearly eight years old is in error. *See* 20 C.F.R. § 926a(g)(2) (defining preschool children as age 3 to attainment of age 6). However, the misstatement does not appear to have had any bearing on the ALJ's decision.

The only issues before the court are whether proper legal standards were applied and whether the final decision of the Commissioner is supported by substantial evidence.

## APPLICABLE LAW

For purposes of eligibility for Title XVI children's disability benefits, an individual under age 18 will be considered disabled if he has a "medically determinable physical or mental impairment or combination of impairments that causes marked and severe functional limitations, and that can be expected to cause death or that has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.906; *see also* 42 U.S.C. § 1382c(a)(3)(C)(i). The Commissioner's regulations establish a three-part evaluation process: (1) determine whether the child is currently engaged in substantial gainful activity. If so, he is not disabled; if not, (2) determine whether the child has a severe impairment or impairments. If not, he is not disabled; if so (3) determine whether the child's impairments meet, medically equal, or functionally equal any impairment listed at 20 C.F.R. pt. 404, subpt. P, app.1 (the Listings). If not, he is not disabled.  20 C.F.R. § 416.924(b)-(d).

If the claimant's impairment or combination of impairments does not meet or medically equal the requirements of a Listing, the Commissioner will decide whether it results in limitations that functionally equal such requirements.  *Id.* § 416.926a(a). To assess functional equivalence, the Commissioner considers how the claimant functions in activities in terms of six domains, broad areas of functioning intended to capture all of what a child can or cannot do.  *Id.* § 416.926a(b)(1). These domains are:  (1)  acquiring and using information, (2)  attending and completing tasks, (3)  interacting and relating with others, (4)  moving about and manipulating objects, (5)  caring for oneself, and (6)  health and physical well being. *Id.*

To establish functional equivalence, the claimant must have a medically determinable impairment or combination of impairments that results either in "marked" limitations in two domains or an "extreme" limitation in one domain. *Id.* The Commissioner will find that a claimant has a "marked" limitation in a domain when the claimant's impairment or combination of impairments interferes seriously with her ability to independently initiate, sustain, or complete activities. *Id.* § 416.926a(e)(2)(i). "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme" and may arise when several activities or functions are limited or when only one is limited. *Id.* The Commissioner will find that the claimant has an "extreme" limitation in a domain when the claimant's impairment or combination of impairments interferes very seriously with his ability to independently initiate, sustain, or complete activities. *Id.* § 416.926a(e)(3)(i). "Extreme limitation also means a limitation that is "more than marked" and may arise when several activities or functions are limited or when one is limited. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citation omitted).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings and that his conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## **EVIDENCE PRESENTED**

The plaintiff's minor son, "M.D.S.," was four years old on the date the plaintiff alleged his disability began, seven years old when the plaintiff filed the application for benefits, and ten years old on the date the ALJ issued his decision (Tr. 106). The plaintiff alleged that M.D.S. was disabled due to limitations caused by attention deficit hyperactivity disorder ("ADHD") and anger management problems (Tr. 140).

M.D.S. was diagnosed with ADHD and prescribed medication. After he began taking medication, his behavior improved. In August 2005, his treatment provider noted that he had behavioral problems, but that he had been off his medication since May. In December 2006, it was noted that M.D.S.'s teacher said that M.D.S. was doing well, but his behavior deteriorated when he did not take his medication. In January 2008, his grades were declining, and he was not focused in school, but again, he was not taking his medication (Tr. 209, 211-13, 230).

In May 2008, the Commissioner referred M.D.S. to James Phillips, Ph.D., for evaluation. After a thorough examination, Dr. Phillips concurred with the diagnosis of ADHD and opined that it was not under optimal control. He also opined that M.D.S. might have impulse control disorder. He opined that the plaintiff could learn simple material depending on the effectiveness of his treatment (Tr. 253-55).

In May and September 2008, State agency medical experts reviewed M.D.S.'s records and evaluated his impairments. The medical experts opined that M.D.S.'s

impairments did not meet or equal any section of the Listings and did not functionally equal the listings (Tr. 262-68, 272-77).

In February 2008, Katie Wright, M.D.S.'s second grade teacher, completed a questionnaire. Ms. Wright wrote that M.D.S. was being instructed at the second grade level and was not in special education. She indicated that M.D.S. had no problems in acquiring and using information and interacting and relating with others. She noted that M.D.S. had some problems attending and completing tasks . She wrote that M.D.S. was very smart and capable and did well in school most of the time. However, she thought M.D.S. did not do well when he did not take his medication. She also thought M.D.S. had some problems interacting and relating with others and had good or bad days depending on whether he took his medication. She noted that M.D.S. had some problems caring for himself, in that he seemed to "forget" or "lose" his medicine. She also noted that M.D.S.'s ADHD manifested symptoms when M.D.S. did not take his medication, but that the medication seemed to put him in a fog and cause appetite suppression (Tr. 151-57).

School records from January 2006 to January 2008 indicated frequent disciplinary problems. The school disciplined M.D.S. in April 2008 for using inappropriate language. He earned As and Bs in the second grade. Ms. Write wrote that M.D.S. had "so much potential" and was very bright, but that he should work on making appropriate choices and having a positive attitude (Tr. 224-25, 247, 248, 252).

At the hearing, the plaintiff testified that M.D.S. was nine years old and in the fourth grade. She said that he was in regular classes. She did not think M.D.S. was underweight. She said that M.D.S.'s main problem was lack of self control. The plaintiff further stated that M.D.S. did well on medication, but that he did not always take his medication. She said he saw a doctor every six months to check his medications (Tr. 40). She said that M.D.S. had only seen a therapist twice, but had not received more treatment due to transportation issues. She said that M.D.S. earned Bs, Cs, and Ds. She said that

M.D.S. did chores such as cleaning up his room and taking out the trash (Tr. 28, 29, 34, 36-38, 40, 41, 46, 54).

M.D.S. also testified at the hearing. He said that he sometimes felt better when he took medication. He said he did not take his medication because it suppressed his appetite. He said that he ate enough to maintain his weight (Tr. 60-62).

## ANALYSIS

Local Civil Rule 83.VII.04 DSC provides that "[a]fter the filing of an answer, the petitioner may file a written brief . . . within thirty (30) days." Thereafter, the Commissioner is allowed 40 days after the service of the petitioner's brief to file a responsive brief. Local Civil Rule 83.VII.05 DSC. When the *pro se* plaintiff in this case did not timely file a brief, this court gave her two extensions of time. The plaintiff did not file a brief, and the Clerk of Court has received no correspondence from her. The Commissioner filed a brief in support of the ALJ's decision on December 6, 2011.

Substantial evidence supports the ALJ's conclusion that M.D.S. was not disabled. The ALJ found that M.D.S. had severe impairments: ADHD, behavioral problems and impulse control disorder. However, the ALJ concluded that the impairments did not meet or equal the requirements of any section of the Listing of Impairments (Tr. 11-12). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original). The plaintiff has not produced evidence that M.D.S.'s impairments met the requirements of the Listings.

The ALJ then considered whether M.D.S.'s impairments functionally equaled the Listings, and found they did not. In making that finding, the ALJ considered each of the six functional domains, concluding that M.D.S.'s limitations were not marked in two domains or extreme in one domain (Tr. 12-20).

7

The ALJ found M.D.S. had no limitations in acquiring and using information (Tr. 15-16). In support of this finding, the ALJ noted that Ms. Wright indicated M.D.S. had no limitations in this domain (Tr. 17; *see* Tr. 152). The ALJ found M.D.S. had less than marked limitations in the domain of attending and completing tasks (Tr. 16-17). In support of this finding, the ALJ acknowledged that M.D.S. had ADHD, but also relied on Ms. Wright's assessment, which indicated that M.D.S. was a smart and capable student who did well in school most of the time, and, the days on which he did not do well were the days he did not take his medication (Tr. 17; *see* Tr. 153-54). In the domain of interacting and relating with others, the ALJ found M.D.S. had less than marked limitations (Tr. 17-18). In support of this finding, the ALJ again relied on Ms. Wright's statement, noting that M.D.S. had serious problems following classroom rules and respecting adults in authority, but that he had very good or very bad days depending on when he took his medication (Tr. 18; *see* Tr. 153-54). In the domains of moving about and manipulating objects, caring for himself, and health and physical well-being, the ALJ found M.D.S. had no limitations, relying on the fact that either there were no problems alleged or Ms. Wright's assessment supporting his conclusion (Tr. 18-20).

In sum, the ALJ relied heavily on Ms. Wright's assessment of M.D.S.'s functioning in concluding that M.D.S.'s impairments did not functionally equal the listings (Tr. 12-20). The ALJ appropriately relied on the opinion of the plaintiff's teacher. *See* SSR 09-2p, 2009 WL 396032, at *4 (Feb. 18, 2009) ("Evidence from other sources who are not medical sources and who know and have contact with the child can also be very important to our understanding of the severity of a child's impairment(s) and how it affects day-to-day functioning. These sources include [teachers]"); SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006) (explaining how the Commissioner considers opinions from non-medical sources).

In determining M.D.S. was not disabled, the ALJ found the plaintiff's testimony was not persuasive (Tr. 14). Fourth Circuit case law is clear that an ALJ may reject a

8

6:10-cv-03264-RMG     Date Filed 12/28/11    Entry Number 33     Page 9 of 11

claimant's subjective complaints of pain based, in part, on his observations of the claimant's behavior at the administrative hearing. "Because [the ALJ] had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." *Shively v. Heckler*, 739 F.2d 987, 989-90 (4th Cir. 1984) (citing *Tyler v. Weinberger*, 409 F. Supp. 776 (E.D.Va. 1976)).

The ALJ focused on M.D.S.'s use of medication in assessing the plaintiff's credibility. Specifically, he noted that the evidence in the record, such as Ms. Wright's statement, showed that the plaintiff did well while on medication (Tr. 14; *see* Tr. 153, 157). However, the medical record showed that the plaintiff had been off his medication from May to August 2005. In January 2008, when his grades were declining and he was doing poorly in school, M.D.S. reported that he had not been taking his medication. Indeed, both he and the plaintiff testified that he tended not to want to take his medication and did not take it on a number of occasions (Tr. 211, 230). While M.D.S. testified that the medication made him not want to eat, the ALJ noted that his weight was normal (Tr. 14; *see* Tr.61-62). The ALJ also noted that the plaintiff testified that M.D.S. had satisfactory grades, which was inconsistent with the plaintiff's claim that M.D.S. had bad grades (Tr. 14; *see* Tr. 41). If a symptom can be reasonably controlled by medication or treatment, it is not disabling. *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986). In addition, the ALJ noted that M.D.S. was not receiving mental health treatment (Tr. 14). Failure to seek medical treatment may support a finding that a claimant's impairments are not of disabling severity. *See Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994).

Further, as argued by the Commissioner, the ALJ's decision was consistent with the opinions of the State agency medical experts (Tr. 262-68, 272-77). *See* SSR 96-6p, 1996 WL 374180, at *4 (July 2, 1996) (noting that state agency physicians are experts in matters pertaining to disability under the Act and their opinions are entitled to appropriate weight); *see also Smith v. Schweiker*, 795 F.2d 343, 345-46 (4th Cir. 1986) (opinion of non-

examining physician can constitute substantial evidence to support the decision of the Commissioner).

Furthermore, the Commissioner notes that, in her complaint, the plaintiff alleged that the ALJ did not have updated information from M.D.S.'s school and his physician (comp. at 3-4). However, it appears that the evidence the plaintiff is referring to is evidence that was generated after the date of the ALJ's decision. It so appears because, in her request for review, the plaintiff asked that the Appeals Council obtain the records from M.D.S.'s teachers current as of the date of the request for review, May 5, 2010 (Tr. 103. At the same time, she noted that she had submitted records to the ALJ, and, presumably, the documents to which she refers are in the record. To the extent that the medical records concerned the plaintiff's condition after the ALJ's decision, they are irrelevant, and the plaintiff's contention has no merit.

The Commissioner also notes that the ALJ developed a full and fair record. In *pro se* cases, ALJs have a duty to assume a more active role in helping claimants develop the record. *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980). In this case, the ALJ discharged that duty by questioning the plaintiff and M.D.S. about all relevant matters and reviewing the medical and education records. *See Craig v. Chater*, 76 F.3d 585, 591 (4th Cir. 1996) (noting how the ALJ fully developed the record). In addition, the ALJ left the record open in case the plaintiff wanted to submit more evidence (Tr. 27); however, no more evidence was received following the hearing (Tr. 14). This court finds that there was adequate evidence in the record for the ALJ to make his decision, and the ALJ appropriately discharged his duty. *See Walker v. Harris*, 642 F.2d 712, 714 (4th Cir. 1981) (noting that the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record and cannot rely only on the evidence submitted by the claimant when that evidence is inadequate).

## **CONCLUSION AND RECOMMENDATION**

This court finds that the Commissioner's decision is based upon substantial evidence and free of legal error. Now, therefore, based upon the foregoing,

IT IS RECOMMENDED that the Commissioner's decision be affirmed.

IT IS SO RECOMMENDED.

s/Kevin F. McDonald<br>
United States Magistrate Judge

December 28, 2011  
Greenville, South Carolina